*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re COPE/MILLER, Minors.

UNPUBLISHED
May 23, 2024

No. 367666
Wayne Circuit Court
Family Division
LC No. 2014-518600-NA

Before: MALDONADO, P.J., and PATEL and N. P. HOOD, JJ.

PER CURIAM.

Respondent[1] appeals as of right the trial court's amended order terminating her parental rights to her minor children, DAM and AIC. On appeal, respondent challenges only the trial court's best-interests findings. We conclude that a preponderance of the evidence supports the trial court's determination that termination of respondent's parental rights to DAM and AIC was in the children's best interests, and we are not left with a definite and firm conviction that the trial court made a mistake. We affirm.

## I. BACKGROUND

The trial court first acquired jurisdiction over DAM in 2014. The Michigan Department of Health and Human Services (DHHS) filed a petition after DAM tested positive for methadone, morphine, and hydromorphone at birth. Respondent admitted that she used heroin on the day that she went into labor with DAM. The trial court authorized the petition and placed DAM with the DHHS for care and supervision. Respondent was ordered to comply with, among other things, random drug screens, substance abuse counseling, individual therapy, and parenting classes. Respondent complied with the services and appeared to benefit from them. In January 2016, the

---

[1] DAM and AIC have different biological fathers. DAM's biological father is unknown. AIC's biological father was not a respondent to the petition and is not a party to this appeal. The trial court entered an order terminating the unknown father's parental rights to DAM, but the unknown father is not a party to this appeal. Accordingly, "respondent" refers to respondent-mother only.

trial court returned DAM to respondent's care and terminated DAM's wardship and the court's jurisdiction.

Shortly after AIC's birth in 2023, the DHHS filed a permanent custody petition pertaining to both DAM and AIC alleging that (1) respondent suffered from ongoing substance abuse, (2) respondent tested positive for cocaine, opiates, fentanyl, and tetrahydrocannabinol (THC) on numerous occasions in the two months before the date of AIC's birth, (3) AIC tested positive for cocaine, THC, methadone, and other illicit substances at birth, necessitating medical treatment, (4) DAM was previously removed from respondent's care under similar circumstances, and (5) respondent abandoned DAM and AIC. The referee authorized the petition, placed DAM in nonrelative care with his godfather, placed AIC with her father, and authorized supervised visits between respondent and the children.

At the adjudication, respondent pleaded no contest as to jurisdiction and the statutory grounds for termination. Relying on respondent's no-contest plea, the trial court found by a preponderance of the evidence that it had jurisdiction over the children pursuant to MCL 712A.2(b)(1) and (2) and that there was clear and convincing evidence that respondent's parental rights should be terminated under under MCL 712A.19b(3)(a)(*ii*) (parent has deserted children for 91 or more days), (b)(*i*) (parent's act caused physical injury or abuse), (j) (reasonable likelihood that children will be harmed if returned to parent), and (k)(*i*) (parent's abuse of children included abandonment).

Subsequently, a best-interests hearing was held. The trial court found by a preponderance of the evidence that it was in DAM's and AIC's best interests to terminate respondent's parental rights. The trial court addressed each of the children separately and articulated the factors it considered in making its determination including, among other things, respondent's failure to rectify the conditions that led to DAM's removal in 2014, the children's need for stability and permanency, the high likelihood of DAM's adoption by his godfather, AIC's relative placement with her father, respondent's fragmented bond with DAM, and respondent's lack of a bond with AIC. This appeal followed.

II. ANALYSIS

Respondent argues that the trial court clearly erred by finding that termination of respondent's parental rights was in the children's best interests We disagree.

We review a trial court's decision that termination is in a child's best interests for clear error. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (cleaned up). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

"If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the children's best interests." *In re*

*Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (cleaned up); see also MCL 712A.19b(5). The focus of the best-interest determination is on the children, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). A trial court making a best-interests determination "has a duty to decide the best interests of each child individually." *In re Olive/Metts Minors*, 297 Mich App 35, 42; 823 NW2d 144 (2012). Factors to be considered for purposes of the best-interest analysis include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*., at 41-42 (cleaned up). A court may also consider whether it is likely that a child could be returned to a parent's home "within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 249; 824 NW2d 569 (2012). Other relevant factors include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). In addition, the court may consider a parent's substance abuse history. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001). And because a child's placement with a relative militates against termination, see MCL 712A.19a(8)(a), "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *Id*. at 43.

The trial court found that a preponderance of the evidence supported that termination of respondent's parental rights to DAM was in the child's best interests.[2] The record reflects that respondent failed to rectify the substance issues that led to DAM's prior removal. Although respondent testified that she had not used any narcotics except methadone in the three months preceding the best-interests hearing, she did not provide any documentation regarding her ongoing treatment and she missed numerous drug screens during the pendency of the proceedings. Respondent has a history of intermittent attempts to reach sobriety, with relapses after each one. Despite her recurring relapses, respondent continued to utilize the same method of substance abuse treatment from which she did not previously benefit—a methadone clinic. The trial court acknowledged respondent's willingness to seek substance abuse treatment but ultimately determined that termination was in the best interests of DAM.

The trial court's determination that termination of respondent's parental rights to DAM was in the child's best interests was not based solely on respondent's history of substance abuse. It was also based on DAM's need for stability and permanency, the high likelihood of DAM's adoption by his godfather, and the fragmented bond between respondent and DAM. We find that a preponderance of the evidence in the record supports the trial court's finding. Respondent's visitation with DAM was inconsistent and infrequent, and respondent either cancelled or failed to show up for numerous visits. Further, respondent's bond with DAM was fragmented by the trauma DAM experienced while living with respondent, and DAM believed that respondent was unreliable

---

[2] Respondent misstates that petitioner had the burden to prove by "clear and convincing evidence" that termination of her parental rights were in the children's best-interests. The applicable burden of proof at a best-interests hearing is a preponderance of the evidence, not clear and convincing evidence. *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015).

and did not prioritize him. Evidence was also presented that DAM's godfather was willing to adopt DAM, which satisfied DAM's need for permanency and stability as opposed to a prospective guardianship.[3] We are not left with a definite and firm conviction that the trial court made a mistake determining that termination of respondent's parental rights to DAM was in the child's best interests.

The trial court also found that a preponderance of the evidence supported that termination of respondent's parental rights to AIC was in the child's best interests. The trial court's determination was based on a number of factors, including respondent's history of substance abuse, respondent's limited visitation with AIC, and respondent's lack of bond with AIC. As discussed, respondent has a history of intermittent attempts to reach sobriety, with relapses after each one. AIC has a need for permanency, stability, and finality; AIC cannot wait for respondent to benefit from substance abuse treatment. The trial court also considered AIC's relative placement with her father, finding that there was a bond between AIC and her father and the placement provided AIC with stability and permanency. Although a prospective custody order was discussed, the record reflects that there was no pending custody action. The trial court found that a custody action would take additional time and would not provide AIC with permanency. We conclude that a preponderance of the evidence supports the trial court's determination that termination of respondent's parental rights to AIC was in the child's best interests, and we are not left with a definite and firm conviction that the trial court made a mistake.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Sima G. Patel
/s/ Noah P. Hood

---

[3] DAM's godfather initiated guardianship proceedings before the instant petition was filed but terminated those proceedings before the best-interests hearing.